## SUPREME COURT.

BENJAMIN CLAPP and THEODORE W. CLAPP, appellants agt. RICHARD D. LATHROP and others, respondents.

In *supplementary proceedings* under § 292 of the Code, the creditor may examine the judgment debtor, and *any other person, fully* in regard to the circumstances attending the *transfer and disposition* of his property, including questions of *fraud* therein.

Thus, where the judgment creditor, after a full examination of the judgment debtor

under § 292, examined two *witnesses who were not parties* to the action or the proceedings, who objected to answering any questions touching property belonging to them and in their possession, or the terms on which they had purchased the same of the judgment debtor, stating that they claimed said property as their own, and giving fully the reasons why they insisted they could not be examined in relation thereto,

*Held,* that said witnesses were in *contempt,* and a fine of $21 was imposed on each of them, and they were ordered to attend and be examined before the referee, and to answer each and every of the questions which had been put to them, and all similar questions which might be put to them on said examination. (*This decision, it will be seen, is adverse to several cases, especially the case of Town agt. The Safeguard Ins. Co., 4 Bosw.,* 683.)

But no order can be made directing an application of property towards the satisfaction of a judgment in case any other person claims an interest therein.

*Fourth District, Plattsburgh, General Term, May,* 1862. Rosekrans, Bockes, Potter and James, *Justices.*

This is an appeal from an order made by Mr. Justice Rosekrans, in proceedings supplementary to execution, punishing the appellants for an alleged violation and contempt before the referee, on their examination as witnesses in said proceedings.

The appellants were neither of them parties to the action in which the proceedings were had. They attended on respondents' request, and were sworn as witnesses. The judgment debtor had been examined fully as to his property and the disposition thereof, and his examination had been closed.

· The plaintiffs then examined the appellants, and they objected to answering any questions touching property belonging to them and in their possession, or the terms on which they had purchased the same of the judgment debtor, stating that they claimed said property as their own, and giving fully the reasons why they insisted they could not be examined in relation thereto.

The judge imposed a fine of $21 on each of the appellants, and ordered them to attend and be examined before the referee, and to answer each and every of the questions which had been put to them, and all similar questions which might be put to them on said examination.

The following opinion was given on such decision :

ROSEKRANS, Justice. Proceedings under section 292 of the Code are a substitute for a creditor's bill under the former system of pleadings and practice. The object is to enable a creditor to ascertain whether the judgment debtor has any property out of which the judgment can be satisfied, whether in his possession or under his control, or in the possession or under the control of another.

When a creditor's bill was filed, the complainant was entitled to an order of reference to a master to appoint a receiver of the defendant's property, and that the defendant deliver over to the receiver, upon oath, all his property, except such as was exempt from execution. Such order also usually contained a provision that the receiver should have power to inquire after the defendant's property, and that he might for that purpose examine the defendant and other persons before the master.

In *Green* agt. *Wicks*, (1 *Barb. Ch. R.*, 309,) the chancellor held that under the first clause of such order, the complainant could not examine the defendant for the purpose of ascertaining whether he had not made a fraudulent assignment of his property previous to the commencement of the suit, unless the property was still in the defendant's possession, and that he could not examine the defendant, or any other person, to matters not relating to the appointment of a receiver, or to the ascertaining of the possession, nature, situation, value, character, or other particulars of the property which was to be assigned and delivered to the receiver by the defendant. And it was questioned, but not decided in that case, whether the receiver, under such an order, could examine the defendant or any other person as a witness to establish the fact of a fraudulent sale or assignment of the debtor's property.

It is insisted that the same rule prevails in relation to examinations of the defendant and other witnesses, under section 292 of the Code, and the case, *Town* agt. *The Safe-*

Clapp agt. Lathrop.

*guard Ins. Co.*, (4 *Bosw. R.*, 683,) seems to sustain that position. ROBERTSON, J., says that "examinations on supplementary proceedings to a judgment can only be extended to the discovery of the property in the possession or control of the defendant which he can deliver over. *If in the possession of another claiming title*—no matter how fraudulent the transfer—no order can be made to compel him to deliver the property, and therefore no questions can be put to the debtor or a witness to discover a prior fraud. The witness is not bound to go further in making disclosures than answering what has become of the property of the defendant, so as to see whether it can be delivered."

I cannot concur with the learned judge in these views. I think he has overlooked or failed to give effect to several plain provisions of the Code, and that if the examination is to be confined within the restricted limits assigned to it, these provisions are unmeaning and absurd, and the full scope is not given to the proceedings which it was intended they should have.

It was clearly contemplated by the framers of the Code, that the examination of the debtor and of the witnesses called by the judgment creditor, under section 292, might extend to fraudulent transfers of the debtor's property, and might disclose facts which would tend to convict them of a fraud. Unless this is so, *why did they, after* providing by that section that on an examination under it, either party may examine witnesses on his behalf, and the judgment debtor may be examined in the same manner *as a witness*, declare at the close of the section, that *no person shall, on an examination pursuant to this chapter, be excused from answering any question on the ground that his examination will tend to convict him of a fraud; but his answer shall not be used as evidence against him in any criminal proceeding or prosecution.*

To hold that the examination of the judgment debtor and witness, under section 292, was not intended to extend

to fraudulent transfers of the debtor's property, would be to convict the legislature of the absurdity of providing by the last clause of the section, for a case which could never occur. No construction of a statute should be allowed, which will lead to an absurdity.

The only provisions of law in relation to the transfer of a debtor's property, under which a criminal prosecution could be had, and under which the debtor or his assignee can be convicted of a fraud or misdemeanor, are section 3, title 6, chapter 1, part 4 of the Revised Statutes, (3 *R. S.*, 5*th ed.*, 971,) and section 39, *id.*, 133, being section 26 of the act of 1831 to abolish imprisonment for debt and to punish fraudulent debtors. The former provides that "every person who is a party to any conveyance or assignment of any estate or interest in lands, goods or things in action, or of any rents or property issuing therefrom, or to any charge on any such estate, interest, rents or profits, made or created with intent to defraud prior or subsequent purchasers, or to hinder, delay or defraud creditors or other persons ; and every person who is privy to or knowing of such conveyance, assignment or charge, and shall willingly put the same in use as having been made in good faith, shall, upon conviction, be adjudged guilty of a misdemeanor." And the 26th section of the act of 1831 provides that " any person who shall remove any of his property out of any county, with intent to prevent the same from being levied upon by execution, or who shall secrete, assign or convey, or otherwise dispose of any of his property, with intent to defraud his creditors or to prevent such property being made liable for the payment of his debts ; and any person who shall receive such property with such intent, shall, on conviction, be deemed guilty of a misdemeanor."

The frauds mentioned in these sections are unquestionably those referred to in the concluding clause of section 292 of the Code. As before remarked, they are the only

frauds relating to transfers of a debtor's property, for which he or any 'other person can be convicted in a criminal proceeding or prosecution. The concluding clause of section 292 of the Code is almost a literal transcript of the 29th section of the act of 1831.

In *Leroy* agt. *Halsey*, (1 *Duer's R.*, 591,) it is said to be impossible to lay down any particular rule on the subject of an examination under section 292 of the Code, further than that the whole examination must have for its single object to ascertain *whether there is any property* of the debtor which ought to be applied to the payment of the judgment ; and the extent of the inquiry, it is said, must be left to the good sense of the officer under whose direction it takes place, having reference to this general object. It was also said in that case, that if the answers to the questions throw any doubts upon the *bona fides* of a sale, the examination may be thorough on that point, as a fraudulent transfer of property may not afford any protection against the creditor.

A transfer of a debtor's property may be valid as between the parties, but void as to the creditors of the assignor. If the transfer was made in violation of either of the statutes before referred to, the property still belongs to the debtor so far as his creditors are concerned.

It is said that if the property is claimed by another person than the judgment debtor who has possession of it, no order can be made for its delivery to a receiver, or that it be applied to the payment of the judgment, and therefore no examination can be allowed as to the good faith of the transfer. I do not regard this as a well-founded objection to such examination. It seems to me that it rather furnishes a reason for allowing the examination. If the examination shows the transfer to have been made in good faith, no receiver is necessary. But if it shows that the transfer was fraudulently made, a receiver is necessary to bring an action to set it aside. True, the creditor may

abandon the proceedings and bring the action in his own name, to set aside the transfer as fraudulent, but the Code allows the creditor to take proceedings supplementary to execution, and to have a receiver appointed to bring the action. This privilege would be of no value, if the means of making it available are not included in the grant of the privilege. To deny the creditor the right of obtaining the appointment of a receiver, by closing the mouth of the parties to the fraudulent transfer, is equivalent to a repeal of the provisions of the Code, in all cases of fraudulent assignments and sales of his property by a judgment debtor, where the possession of the property has been taken by the fraudulent assignee or vendee. Such, certainly, would be the result in all cases where the parties to the fraud were sufficiently cunning to exclude all witnesses to the transaction.

I do not think the framers of the Code, having a knowledge of the secrecy with which fraud is committed, are chargeable with the consummate folly of providing a remedy which would be useless and unmeaning in ninety-nine cases out of a hundred ; and especially is such a conclusion repelled, when they have provided that the parties to the fraud shall not be excused from answering questions which may convict them of such fraud, and have also clothed the officer before whom the examination is had, with the power of forbidding a transfer or disposition, by the fraudulent vendee or assignee, of the property held by him, until the receiver can have an opportunity to bring an action to set aside the fraudulent transfer.

The questions propounded to the witnesses in this case, were proper, and should have been answered by them. They were not entitled to the aid or advice of counsel upon their examination, and the interference of counsel with the examination was improper. The affidavits which they have made, however, state that they did not intend to treat the order of the judge with contempt, and that they acted

under the advice of counsel in refusing to answer, and that they are ready and willing to answer any question which may now be ordered to be answered. As there was some apparent authority for their refusal, in the cases cited, this is not a case for a severe punishment of the witnesses. They should, however, be required to pay the expenses of the plaintiffs in this proceeding to obtain a full examination, and must be ordered to answer fully the questions which they have refused to answer, and all others of a similar character which may be propounded to them. These expenses are shown to have amounted to $42, and each witness must pay one-half of that sum.

The appellants severally appealed to the general term from this order.

James Gibson, *for appellants.*

I. The judge had no authority to grant the order appealed from.

The statute under which these proceedings were had, does not create a court, but merely confers a special power on the officer, and that power must be precisely followed, or the proceedings will be void. The fact that the proceedings were before one of the justices of the supreme court, gives no greater validity to its proceedings than if it had been before a subordinate judge.

The statute is summary in its nature also, and liable to be, and has been before now, shamefully abused; for a distinguished judge has said that "lawless power is never so dangerous as when executed by public officers under the forms of law." (Platt, J., *in Suydam* agt. *Keys,* 13 *John. R.,* 446.)

The order was unauthorized, as it imposes punishment on the appellants for not answering questions put to them in regard to their own property—the statute only authorized questions in regard to the property of the judgment debtor.

Clapp agt. Lathrop.

It is fully shown by the affidavits of the appellants, that the property claimed was theirs, and this disposed of the application of the respondents.

The case alleged by the respondents was fully denied, and the judge could not punish them without proof. If he doubted their answers, he might have ordered interrogatories to be filed, but he could not adjudge them guilty when the whole equity of the application was flatly denied.

The statute not authorizing any property claimed by a third person to be delivered up, is proof that it was never intended to allow an examination as to the details of the title claimed by the party, or how it originated, or whether fraudulent or in good faith. It would be making the judge a mere fishing-net, to be used by the party in dragging out and gathering up the evidence or facts to be used in a suit thereafter to be brought. We protest against the judiciary being converted to so ignoble a purpose. It has ever been esteemed as highly dishonoring to the magistrate, to be used as a mere means or conduit for the passage of the measures of a party in the pursuit of materials to commence a law suit. On this ground, for more than two hundred years, " fishing bills " have been classed with other legal carrion, and put " where the vultures do gather." The courts have found that there was always enough to do to take care of the actual, existing and *de facto* frauds, without going about " smelling for more."

Fishing bills have been always discouraged. In *Joy* agt. *Kehewich*, ( 2 *Vesey, jr.*, 679,) LOUGHBOROUGH, Ld. Ch., said : " This is a fishing bill, to know how a man makes out his title as heir. He is to make it out, but he has no business to tell the plaintiff *how* he is to make it out." So in the case under hearing, we are to make out our title to the property claimed by us, but there is no call for us now to tell how. All in good time, we will do so to the respondent's satisfaction. And in *Denison* agt. *Ashley*, ( 2 *Ves., jr.*, 462,) the same judge characterized the complaint there " as

another of the fishing bills he did not like to see in court."
And to the same point, see *Newkirk* agt. *Willet*, (2 *Caine's
Cas.*, 103.)

The question as to the right to examine the purchaser
of property from the judgment debtor, was fully and ably
examined in *Vanwyck* agt. *Bradley*, (3 *Code R.*, 157.)   It
was held that the claim alone of such person terminated
the right to examine him under those proceedings, and the
claimant alone could only be required to state the measure
or extent, but not the nature of his title  · To ·the same
point, see the cases of *Town* agt. *Safeguard Insur. Co.*, (4
*Bosw.*, 683,) *Stewart* agt. *Foster*, 1 *Hilton*, 505.)

II. If authorized to grant it, the order should not have
allowed some of the questions which it permits to be put.
The order, for  instance, requires the appellant, T. W.
Clapp, to answer as to whether the sale to him was not
fraudulent.    That is, asks questions tending to that result.
The appellant, B. Clapp, is also asked in substance, whether
in the sale to him by the judgment debtor, the latter was
not guilty of fraudulent conduct.

III. The order improvidently creates an inquisition at
the pleasure of the plaintiffs' counsel, in that it requires
the appellants to answer all similar questions that may be
addressed to them.

For these reasons the order should be reversed, with
costs and disbursements.

N. B. MILLIMAN, *for respondents.*

I.   The question whether a witness can be examined
touching the consideration of a transfer by the debtor to
the witness, after he has sworn that he has received such
transfer, and is in possession and claiming title to the pro-
perty, cannot arise in this case.   Because both of the wit-
nesses refused to swear that any such transfer was made,
or that they were in possession of any property received

from the debtor, to which they claimed title ; and of course no question could be put as to the consideration of a trans= fer without first showing one made.

The objections on which the appeal is sought to be sustained, if tenable in any case arising under section 292, are therefore certainly premature and absurd in this.

II. But if that question is to be considered, then it is insisted that both the letter and spirit of the whole chapter relating to supplemental proceedings clearly authorize the creditor, in proceedings under section 292, to examine either the debtor or'any other person, in the same manner ·as a witness upon an issue to discover whether the debtor has any property, or equitable interest in his own hands or in the hands of another, which ought to be applied to his judgment. And for this purpose, to inquire into the consideration, *bona fides*, intent or trust on which any transfer of property has been made by the debtor.

The first and main object under this section is to discover the property of the defendant. The examination is intended to be a substitute for the former proceeding by creditor's bill, provided by title 2, art. 2, part 3d, chap. 1, R. S. See sections 61, 62, 63 to 68. See also section 29 of the act to abolish imprisonment for debt, (*Laws of* 1831,) under which " no person shall be excused from answering any bill in equity seeking a discovery in relation to any fraud," &c. ; " or from answering as a witness in relation to any such fraud," &c. ; " but no such answer shall be used in evidence in any other suit or prosecution."

The last clause of section 292 of the Code is a transcript from the 29th section of the act to abolish imprisonment for debt, except that section 292 allows the answer of the witness to be used as evidence against him in all cases except in " criminal proceedings or prosecutions."

Since the Code, no other means of compelling discovery of a debtor's property, after execution returned, exists, except such as are provided in chapter 9 of the Code. Did

the legislature intend by the Code to deprive the judgment creditor of any means of discovery which he possessed before its enactment ? If not, they probably did not intend to " excuse" either the debtor or any confederate in possession of his property, from discovering on oath the consideration, intent and trust on which any such property has been transferred by the debtor, and is held by his confederate ; for either could have been compelled to make that discovery before the Code, by the provisions of the statute above cited.

The title of the chapter evinces an intent to give the creditor some aid which he had not before, and which his execution could not give. And all of its provisions presuppose that the debtor has so concealed, tranferred or covered his property, that an execution cannot reach it ; or that it consists of such equitable interests as are not leviable upon by execution. Else the execution would require no aid. If the property is in the possession of the debtor, and tangible, no examination or discovery is needed. The examination of the debtor and witnesses, as provided for in section 292, is based upon the supposition that if the debtor has any property or equitable interest any where, it may be found in the hands of some confederate under some disguise or secret trust, inasmuch as the sheriff, with his execution, has been unable to find it in the hands of the debtor. And as the legislature probably understood what every one knows, that confederates seldom call others to witness their fraudulent devices, they must have intended that the creditor should have the right to examine not only the debtor but his fraudulent vendee as a witness. And in a case where the vendee and witness is in possession of the debtor's whole property, it is very evident that if the vendee is examined as to the debtor's property at all, his examination must relate to the property of the debtor in his own hands ; and if the legislature intended that the creditor should obtain information of any value

Clapp agt. Lathrop.

from the examination thus provided, it is equally evident they must have intended that the witness should be compelled to disclose what property or equitable rights he had received from the debtor ; its amount or value ; the nature of the agreement between the debtor and witness by which it is held, and the consideration paid, or agreed to be paid, if any ; and any other fact evidencing the intent and good or bad faith of the transfer.

Did the legislature intend that a confederate of the debtor in possession of property recently transferred to him, should be excused from disclosing such facts ? Clearly, if it was supposed a vendee in possession of property would ever be examined under section 292, they could not have intended to excuse him from disclosing such facts, for the last clause of that section says, " No person shall be excused from answering any question on the ground that it will tend to convict him of a fraud." Who but the debtor himself, or some fraudulent vendee of the debtor, could be convicted of a fraud in relation to his property ? If no one, then it would seem very clear that this section anticipated that they might both be examined. And who but the debtor, and his confederate who receives his property with intent to defraud creditors, could be proceeded against in any criminal proceeding for the fraud ? Most certainly no one, as will appear by reference to section 3, title 6, chapter 1, part 4, 3d vol. R. S., 5th edition, and section 39, *id.* And if so, it would seem equally clear that the provision that " his answer shall not be used as evidence against him in any criminal proceeding or prosecution," could apply to no other except the debtor or his vendee. And if the vendee, in possession of the debtor's property, is really one of the persons who " shall not be excused from answering any question," though it may prove him guilty of a fraud, and is the person whose " answer," though it may be used in a civil proceeding, " shall not be used in a criminal " one against him, then pray,

what question or answer can, by human ingenuity, be put or given, which " will tend to convict the witness of the commission of a fraud," except such questions and answers as evince a want of consideration, bad faith, or intent on the part of the witness to defraud creditors ?   These are the very elements of the only fraud for which he could be convicted, and beyond question embrace the very facts which the legislature intended that the witness should not be " excused " from disclosing.

But the appellants insist that the witness, having answered that he " claims the property," or (as in this case) that he is " interested." may refuse to state the amount of such property, the nature and extent of his claim thereto, or the foundation of such claim, because it is said no order can be made by the court for its application to the judgment, even if the claim be conceded to be without any consideration, and entirely fraudulent, and therefore nothing is to be gained by the further examination; and this construction, which involves so many absurdities, and defeats the unequivocal language and evident intent of nearly every section of a whole chapter, is supposed to be justified by section 299.   It is believed that both the position of the appellants and the reasons by which it is sought to be supported, are unfounded and absurd.

It is evident that section 299 was not intended to qualify and limit section 292.   It does not even relate to the same subject.   It contains no provision on the subject of examination or discovery, and neither in terms nor by implication seeks to regulate the extent of the examination, or in any way to qualify or limit the language of section 292. On the contrary, it presupposes the examination of the witness to have been finished, and the discovery obtained under section 292 ; and the parties to be before the judge, asking for the final order which the discovery thus obtained may show the creditor is entitled to receive,

Section 299 has no other object except to qualify sec-

tion 297, so as to prohibit the judge before whom the examination is produced, from making the summary order authorized by that section, and to provide for an action by a receiver in place of a summary order, whenever the " adverse claim" spoken of in section 299 should " appear" to him from the examination thus presented. If no such adverse claim is disclosed by the whole examination, the summary order provided by section 297 will be made. But " if it appear that the person alleged to have property of the debtor, claims an interest adverse to him, such interest shall be recoverable only in an action by the receiver." Clearly, this is only intended to limit the judge and the creditor to a particular remedy, when the whole examination provided by section 292 discloses a particular state of facts ; and not to prohibit the creditor from showing a different state of facts, and thus entitle himself to a different remedy.

And as section 292 has in express language given the creditor the right to compel the witness to state the consideration and nature of his claim to the debtor's property, even though it may convict him of fraud, it is difficult to understand how section 299 deprives him of that right, without in any way expressing such an intention. On the contrary, section 299 seems to furnish an additional reason why the witness should be compelled to state the consideration of his claim to the debtor's property, and the extent of his interest therein. Because it imposes upon the judge the clear duty of determining, 1st, whether it does or does not " appear that the person alleged to have property of the debtor claims an interest adverse to him ;" and if so, 2d, the extent of such interest. For it is " such interest" only as shall be claimed adversely, that " shall be recoverable only in an action by the receiver." The residue of such property will still be subject to the summary order of the judge under section 297. And how shall the judge determine whether the witness thus holding the debtor's

property really " claims an interest adverse to him," or the extent of such interest, if the only witness who can know may refuse to state either the amount of the property, or the nature, consideration or extent of the interest so claimed ?   If the witness swears in terms " I claim an interest in the property," this proves nothing.

Two questions still remain for the judge to determine :

1. " Is that interest adverse to the debtor ?"   If not, then the naked claim of the witness amounts to nothing, and the judge may make a summary order under section 297.   Certainly the judge cannot assume that it is adverse to the debtor because the witness says he claims it, and at the same time deny the creditor the right of showing by the witness that it is not adverse, but in harmony with the debtor's rights.   Whether it is or is not adverse to the debtor, depends upon the facts, and not the statement or opinion of the witness that his claim is adverse.   He might swear to that opinion a hundred times without truth, and yet without danger of perjury.   And certainly if the witness should swear that he " claimed an interest in the property adverse to the debtor," but should also swear that he received it from the debtor without any consideration, knowing of the insolvency of the debtor, and to conceal it from his creditors, the judge, disregarding opinions, and relying on the facts, would necessarily determine that the witness " did not claim an interest adverse to the debtor."

2. But if the interest so claimed was adverse to the debtor, the judge must still determine " the extent of that interest," because it is only " such interest" which is exempt from the summary order provided for in section 297.   If that interest is less than the whole, the creditor is entitled to the summary order for the residue.   Or if subject only to a lien, is entitled to pay such lien, and then have the summary order to apply it to his judgment.   And how can the judge determine these questions without the facts on which they both depend ?   Either the judge or the witness

must determine those questions. Did the legislature intend that the witness should determine them for himself, without giving any fact or reason for his decision, and without in any way rendering himself liable for a false claim ? If so, they might as well have dispensed with the judge, and entirely omitted sections 292, 297, 298 and 299 from the chapter, for upon this construction of section 299, neither the judge, nor any nor all of those sections could be of any possible use to the creditor in any case where the witness claims all the property of the debtor, if the creditor has no other proof except this witness. The witness has only to claim the property, decide his claim to be adverse, and excuse himself from any further answer, and forthwith section 292 is wiped clean from the statute, and every fact on which the creditor's right to any remedy under those sections depends, is locked up within the breast of the witness. He can neither establish the facts which are essential to entitle himself to the " summary order" provided by section 297, nor that " apparent right or probable interest" in the property thus claimed, which is indispensable to entitle him to a receiver under section 298. (7 *How. R.*, 187.) And then, of course, the " action by a receiver," and every other remedy provided in section 299, becomes an absurdity. Thus, section 299, in the hands of the appellants' counsel is made, by construction, to wipe out the unequivocal language of section 292 ; to defeat every beneficial object of sections 297 and 298 ; and finally, to annihilate itself in every case where the debtor has placed his property in the hands of a confederate.

The reason assigned for this construction, viz : that no order can be made for the application of the property after the claim is put forth—even if it be confessedly fraudulent—in no way obviates the necessity for a further examination. The summary application of the property claimed is not the only object of the examination; and I think I have shown that a naked claim—not adverse—will not

defeat even this summary application of the property—because, if conceded to be void, it is no claim at all, and no action could be necessary to try it. And that, even if the claim is such as to prevent this summary remedy, there still remains to the creditor his right to a receiver under section 298, and his right to the action and injunction under rection 299, neither of which can be made available to him without the further examination of the witness. But these are not all. If it be conceded that the claim is so fair that no order for the application of the property can be made—so fair that the creditor will neither desire the receiver or the action to contest the claim to the property itself, still the creditor has an indisputable right to reach the consideration which the witness has paid to the debtor for the property so claimed in the hands of the debtor, either by summary order or by a receiver and action. But if the witness, who alone can know the nature, time and amount of the consideration so paid, may close his mouth and defeat all remedy, the right itself becomes of no value, and summary proceedings a mockery.

The order appealed from should be affirmed, with costs.

As to contempts, see § 302, *Code; also, R. S., part* 3, *chap.* 8, *title* 13, §§ 20, 21 ; *How. Pr. R.*, 487. As to the costs allowable on this appeal, see § 3 *of the Code, and* 4 *How. Pr. R.*, 190. This is a special proceeding. · Also, *Laws of* 1854, *chap.* 270, *p.* 592, §§ 1, 2 *and* 3. "In special proceedings, and on appeals therefrom, costs may be allowed in the discretion of the court, and when allowed, shall be at the rate allowed for similar services in civil actions." The ordinary costs of an appeal in civil actions will not more than indemnify the respondents on this appeal.

By the court, BOCKES, Justice. Appeal from an order made by a judge of this court, in proceedings supplementary to execution, adjudging the appellants to be in contempt for refusing to answer certain questions put to them

on their examination before the referee appointed to take and certify the same.

The authority to punish for a contempt in such case, is given by section 302 of the Code of Procedure, which provides that if any person, party or witness disobey an order of the judge or referee, duly served, such person, party or witness may be punished by the judge as for a contempt. The disobedience alluded to reaches the case of a refusal to answer proper questions, as well as to a refusal to appear and submit to be examined.

The question of contempt was properly before the judge for adjudication on the affidavits, without the filing of interrogatories, inasmuch as the matter charged as constituting the contempt was not in dispute before him. It was not denied that the appellants refused to answer certain questions put to them on their examination before the referee. But it was insisted, and it is here urged, that they were not bound to answer them, and that their refusal was therefore no contempt. The refusal to answer being admitted before the judge, the filing of interrogatories was unnecessary. The question was properly and fairly before the officer on the affidavits.

The appellants were not parties to the action in which the proceedings were taken, nor were they parties to the proceedings; but were witnesses in that proceeding under the clause of section 292 of the Code, which provides that on an examination under that section, either party might examine witnesses in his behalf. The subject matter of the examination was the property of the judgment debtor. The examination of the witnesses was of course to be limited to that subject; but it is insisted that the examination is subject also to a further limitation: that having sworn that they owned or claimed title to property obtained by them from the judgment debtor, the witnesses could not be compelled to state or disclose the circumstances of the sale and transfer to them. The creditor urges that being .

authorized to examine concerning the property of the judgment debtor, he may inquire as to its nature, situation and value, and if transferred, may also inquire into the circumstances attending its possession, transfer and sale.

I had supposed that these proceedings were intended, to a considerable extent, as a substitute for the old bill of discovery, now abolished, and that they were adopted as more simple and direct, and less expensive than a formal action.   If on examination it should turn out that the judgment debtor had no property ; that his transfers had been *bona fide*, no further trouble or expense would be incurred ; on the contrary, if it should be apparent that the party had property undisposed of, or had disposed of property fraudulently, it might be seized under execution, or an action might be prosecuted by the creditor in his own name, or through a receiver to have the property fairly applied to the satisfaction of the judgment.   By this course of proceeding the facts could be determined speedily and with little expense.   But if the examination is limited in the way claimed by the appellants, very little is attained by it—substantially nothing—towards the advancement of justice.   Such limitation, in my judgment, effectually frustrates the object and advantages intended to be afforded by those proceedings.

It seems to me, that a fair consideration and construction of section 292, can leave no doubt upon this question. It was, in my judgment, plainly intended to give to the creditor the right to inquire, in these proceedings, into the nature and situation of the property of the judgment debtor, and also into the fairness of his transfers and disposition of it.   The section gives the right to examine the debtor " concerning his property," and also on such examination to examine witnesses in his behalf ; and then provides that no person shall, on such examination, be excused from answering any questions on the ground that his examination will tend to convict him of the commission of a

fraud ; plainly implying that fraud in the transfer of the debtor's property may be a subject of examination.

There is nothing in the section which gives a more extended scope of examination against the debtor than against witnesses. Its language is, that under this section either party may examine witnesses in his own behalf, and the judgment debtor may be examined in the same manner as a witness ;—and we have seen that fraud is a matter of examination.

The case of *Van Wyck* agt. *Bradley*, (3 *Code Rep.*, 157,) has not been generally accepted as an authority. Indeed, it has been almost universally disregarded in practice throughout the state. In *Town* agt. *The Safeguard Ins. Co.*, (4 *Bosw.*, 683,) Judge ROBERTSON held that, inasmuch as no order could be made to compel a delivery of property, therefore no question could be put to the debtor or a witness to discover or prove fraud.

But the purpose of the examination is not merely to obtain discovery of property in the debtor's hands or under his control. Other objects, substantial and useful in their results, are within its purview. It is often an important and wholesome object of examination to discover whether a fraud has been perpetrated, so as to determine whether an action should not be brought to correct and punish the wrong. Judge BOSWORTH remarks, that such an examination (an examination as to fraud) is a fishing one ; that the remedy of the creditor is by a direct action. But I submit that his ruling puts the party to a fishing suit (or to an abandonment of any attempt to collect his debt;) this, too, at great expense, and on uncertainty : all which might and generally would be obviated by a full and fair examination. An honest debtor will not feel that it is unfair in his creditor to demand a disclosure of his situation ; nor should a creditor be regarded as on a fishing excursion, when he takes steps to enforce his right. An honest transferee of the debtor's property will also be will-

ing to explain to a creditor the circumstances of the transfer, and thus avoid suspicion of dishonesty, as well as the trouble and expense of defending an action. A creditor is not without rights in regard to the property of his debtor, and is entitled to be fully and fairly informed in relation to it, as well by the debtor himself as also by any one who claims it from him by recent transfer. An inquiry by him ought not to be deemed impertinent or meddlesome.

I can entertain no doubt but that the creditor may examine the judgment debtor, and any other person, fully in regard to the circumstances attending the transfer and disposition of his property under proceedings supplementary to execution.

No order can be made directing an application of property towards the satisfaction of a judgment in case any other person claims an interest therein. But this in no way conflicts with the right or purpose of examination under section 292.

The order appealed from should be affirmed, with ten dollars costs and disbursements on the appeal.